IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAV SUB, INC. (d/b/a CONTINUUM HEALTH TECHNOLOGIES CORP.),<br><br>Plaintiff,<br><br>v.<br><br>QLIQSOFT, INC.,<br><br>Defendant. | CIVIL ACTION NO.: 3:23-cv-02504<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

1. This is an action under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. §§ 271, 286), for patent infringement in which DAV Sub, Inc. (d/b/a Continuum Health Technologies Corp., ("Continuum" or "Plaintiff"), makes the following allegations against QliqSOFT, Inc. ("QS" or "Defendant").

## PARTIES

2. Plaintiff is a Delaware company, having its primary office at 801 Barton Springs Rd., Floor 9, Austin, TX 78704.

3. Defendant is a Delaware company with its principal place of business at 13155 Noel Rd., Suite 900, Dallas, TX 75240. Defendant's Registered Agent for service of process in Texas appears to be Krishna Kurapati, at 3605 Vineyard Way, Farmers Branch, TX 75234.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Venue is proper in this district under 28 U.S.C. §§ 1391(c), generally, and under 1400(b), specifically. Defendant has a regular and established place of business in this Judicial District, and Defendant has also committed acts of patent infringement in this Judicial District.

6.     Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

7.     Defendant has established offices in Dallas, Texas – within the Northern District of Texas.

**CONTACT US FOR MORE INFORMATION:**
qliqSOFT Three Galleria Tower, 13155 Noel Road, Suite 900, Dallas, Texas 75240
Phone: (866) 295-0451   Email: sales@qliqsoft.com   Website: www.qliqsoft.com

8.     Defendant has infringed, and does infringe, by transacting and conducting business within the Norther District of Texas. Upon information and belief, operations at Defendant's Dallas location include sales, marketing, business development, and/or technology development for Defendant's infringing instrumentalities.

9.     Defendant's office in Dallas, Texas is a regular and established place of business in this Judicial District, and Defendant has committed acts of infringement (as described in detail, hereinafter) at Defendant's office within this District. Venue is therefore proper in this District under 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND – PLAINTIFF'S PATENTS

10.    Plaintiff is a software company providing healthcare related software as a service ("SaaS") products and systems ("Plaintiff's Systems"). The development of the Plaintiff's core intellectual property began in the early 2000's and has continued ever since.

11.    Plaintiff currently owns a half dozen issued U.S. Patents, reading upon various healthcare related technologies and operations - including, but not limited to: healthcare related revenue cycle management; HIPAA secure messaging; telehealth operations; healthcare payment

systems; secure file sharing; and mobile applications and interfaces for a variety of users and resource providers.

12. Plaintiff currently owns multiple pending U.S. Patent applications, directed to its healthcare related technologies and operations, in addition to innovative technologies and systems.

13. Plaintiff has invested, and continues to invest, substantial resources – both in terms of time and costs – to procure and develop patents that protect its intellectual property.

14. Plaintiff's Systems implement and practice the inventions disclosed and claimed in the U.S. Patents owned by Plaintiff.

## DEFENDANT'S INFRINGING INSTRUMENTALITIES

15. Defendant directly – or through intermediaries including distributors, partners, contractors, employees, divisions, branches, subsidiaries, or parents – made, had made, used, operated, imported, provided, supplied, distributed, offered for sale, sold, and/or provided access to software systems, cloud-based software, and/or smart device apps for peer-to-peer messaging between healthcare professionals, ancillary service providers, administrative staff, caregivers, or patients – including, but not limited to, QS's Secure Texting, Virtual Visits, healthcare chatbots, and telehealth software systems and platforms ("QS Software Systems"):

> **What Products Does QliqSOFT provide?**
>
> The QliqSOFT platform consists of Qliq Secure Texting, Virtual Visits, Quincy healthcare chatbots, and dozens of amazing telehealth features to meet the communication and engagement needs of healthcare professionals while protecting protected health information (PHI). In addition to our products, we offer a wide range of professional services including project management, integration design, conversational AI chatbot dialogue flow design, and more.

16. The QS Software Systems are the infringing instrumentalities.

17. The infringing instrumentalities operate using mobile and desktop computing and communications devices, and computer server and storage systems.

18. The infringing instrumentalities comprise a SaaS messaging service, wherein everything is cloud based except the message archival server, qliqSTOR.

19. The infringing instrumentalities utilize an individual public/private key encryption model.

20. The infringing instrumentalities comprise a SaaS messaging service, wherein everything is cloud based except the message archival server, qliqSTOR.

21. The infringing instrumentalities encrypt/decrypt all messages on a user's mobile device(s) and computers, where they are stored in an encrypted database.

22. The infringing instrumentalities include: customizable message notification and sound alerts; message delivery confirmation; manual message acknowledgment; custom lists of quick messages; the ability to send images/videos/files/voice messages; organization of users by groups/subgroups; inclusion of external users; centralized administration; remote lock and wipe; message archiving; and EHR and directory integration.

23. The infringing instrumentalities operate such that the mobile application is always on, whether in the foreground or the background

24. The infringing instrumentalities operate such that a mobile number is not required to route messages - real-time communication can occur from a desktop, smartphone, or tablet.

25. The infringing instrumentalities directly integrate with EHRs and other clinical systems through the interface engine qliqSTOR, which uses HL7 2.x standards and above to interconnect Qliq with the system.

26. The infringing instrumentalities send non-secure notifications to non-secure devices.

27. The infringing instrumentalities utilize a distributive architecture where data is stored on a customer's devices and servers.

28. The infringing instrumentalities use a cloud-based SIP server for real-time message routing and delivery. All messages are end-to-end encrypted so only the sender can encrypt the message and the intended recipient can decrypt the message.

29. The infringing instrumentalities comprise a peer-to-peer architecture that uses a combination of Public and Private Keys. All messages are deleted from QS Software Systems

servers immediately upon delivery - encrypted messages are transiently stored on the servers if a recipient is offline.

30. The infringing instrumentalities operate such that a sender can initiate messages even if a network connection is unavailable. The messages are automatically delivered when the sender goes online.

31. The infringing instrumentalities operate such that they will automatically lock after a pre-defined amount of inactivity or idle time. Both end-users and administrators can remotely lock and wipe the application data by logging into an administrative dashboard on qliqSOFT's website.

32. The infringing instrumentalities operate such that messages are stored locally in an encrypted database on a user's smartphone, tablet, or desktop, but are automatically deleted according to the message expiration set by an administrator. A user has the option to delete messages and attachments sooner if desired.

33. The infringing instrumentalities operate such that by default, messages will expire and be deleted from the end-user Qliq application. For Qliq for Professional users, messages automatically expire after 7 days. Qliq Business Administrators can select the message retention rate. Messages can be archived for a longer period by the organization using the qliqSTOR archive.

34. The infringing instrumentalities operate such that policies are administered through the Qliq Business/Enterprise web console under the direction of an administrator.

35. The infringing instrumentalities operate such that all messages and their status are individually date/time stamped. If an intended recipient is offline, the status shows "Offline." When the recipient receives the message, the status on the sender's device changes to "Delivered" and when the message is viewed the status changes to "Read." In addition to message logging, the infringing instrumentalities allow senders to request an acknowledgment from the receiver. This functionality ensures that messages are received, read, and understood. The acknowledgment itself is also date/time stamped. By touching or right clicking a mouse over a message segment, an option appears to view message details, which include message id, the date/time it was created, sent, received, and read.

36. The infringing instrumentalities include an interface hub application for integration. It uses SIP for nurse call systems and HL7 for EHR as well as other clinical systems. This includes event notification as well.

37. The infringing instrumentalities utilize peer-to-peer messaging between healthcare professionals, ancillary service providers, administrative staff, caregivers, or patients. All users are identified by their email address and the QS Software Systems cloud servers route the messages from one user to another. Peer-to-peer messaging does not depend on a mobile number and uses a combination of Public and Private Keys to ensure that all messages remain encrypted while in transit or at rest.

38. The infringing instrumentalities support both collaborative group chats as well as broadcast group messages.

39. The infringing instrumentalities operate such that documents, spreadsheets, PDFs, images, video, and audio files can be sent and received securely.

40. The infringing instrumentalities provide web-based accounts for both individual and group accounts. Individuals can manage their personal profiles and passwords. Group administrators can manage users, create, and manage sub-groups (including access privileges), tailor the security settings, manage devices, review activity logs, and assign multiple administrators. Additionally, group administrators can remotely lock and wipe data from an end user's device in the event the device is lost or stolen.

41. The infringing instrumentalities allow a user to mask the caller ID for calls outbound from the Qliq Secure Texting app.

42. The infringing instrumentalities operate such that documents can be uploaded from a user's device gallery or by taking a picture of the document, which can then be annotated, signed, and sent to other Qliq users or uploaded directly to QliqSTOR.

43. The infringing instrumentalities operate such that providers and patients can interact remotely via live audio/video sharing to facilitate patient care and education, via QS Software Systems telehealth functions.

44. The infringing instrumentalities comprise secure texting that provides a user with the ability to remotely track the GPS locations of remote care teams. These functions enable group administrators to remote manage resources and direct them to the patients nearest to them.

45. The infringing instrumentalities provide active directory integration, giving users tools to sync credentials between QS Software Systems and other enterprise apps.

46. The infringing instrumentalities comprise archive features that receive a copy of all messages sent between users. All messages, attachments, and delivery status timestamps are stored.

47. The infringing instrumentalities provides a display menu with user-selectable setting and options relevant to HIPAA compliance related parameters. For example, a user can select a message retention time:



48. The infringing instrumentalities operate such that messages are assigned lifespans so that they delete automatically, and administrators can remotely retract and delete any message that is sent or received on a mobile device that is subsequently lost, stolen, or otherwise disposed of:



49. The infringing instrumentalities operate such that the data flow of messages through those instrumentalities may be illustrated as follows:



50. The infringing instrumentalities comprise the following security features:



51. The infringing instrumentalities monitor general activity on their servers and provide a detailed audit and logging report for customers.

52. The infringing instrumentalities operate such that an administrator for a practice, group, or health system can back up their data. The infringing instrumentalities enable a user to create a PDF and/or print conversations for inclusion in a patient's health record.

53. The infringing instrumentalities comprise secure messaging applications that assign a unique password and PIN code to each user so that they are the only ones who can decrypt the messages received.

54. The infringing instrumentalities' secure messaging applications are real-time and provide physicians access to data no matter where they are located.

55. The infringing instrumentalities operate such that a user may: navigate between secure texting, voice, and video calls; capture and share images, video, and audio; capture consent signatures; and/or communicate with external groups.

56. The infringing instrumentalities operate such that a user may: create, sign, and share PDFs; create and sign consents, referrals and more; upload images; and expedite workflow by uploading images and PDFs from the field into the EHR.

57. The infringing instrumentalities operate such that a user may tap an attachment icon to the left of the text field to reveal a media menu. A user can take a picture with the camera icon and record a video or audio clip to attach to a message.

58. The infringing instrumentalities provide the following features: customizable message notification and sound alerts; message delivery confirmation; manual message acknowledgement; custom lists of quick messages; the ability to send images/videos/files/voice messages; organization of users by groups/subgroups; inclusion of external users; centralized administration; remote lock and wipe; message archiving; and EHR and directory integration.

59. The infringing instrumentalities operate such that messages exchanged contain metadata indicating the names of the users. Messages comprise metadata that get encrypted, or decrypted, respectively. Encryption is an indication of HIPAA compliance.

60. The infringing instrumentalities provide user search functions, to search subjects, messages, contacts, and groups. A user may also search contacts.

61. The infringing instrumentalities provide activity reports that display certain searchable user actions such as app login/logout, the time stamp details for each message, including who sent the message, the recipient, and when that message was created, sent, received, read, acknowledged, and deleted.

62. The infringing instrumentalities provide reporting tools that operate such that a user can enter a name or keyword in Search field to search across all message fields: sender, receiver, subject, and message. This searching can be further refined by sender, receiver, subject, message, and time range.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 7,426,730**

63. Plaintiff herein restates and incorporates by reference paragraphs 15 – 62, above.

64. Plaintiff is the owner by assignment of United States Patent No. 7,426,730 ("the '730 Patent") entitled "Method and System for Generalized and Adaptive Transaction Processing Between Uniform Information Services and Applications" – including all rights to recover for past, present, and future acts of infringement. The '730 Patent issued on September 16, 2008, and has a priority date of April 19, 2001. A true and correct copy of the '730 Patent is attached as Exhibit A.

65. The Defendant's infringing instrumentalities provide components that are communicably coupled to, and provide access to, a plurality of networked data, communication, information, and application resources ("Network Resources").

> QliqCHAT Secure Texting provides a real-time, secure, HIPAA-compliant healthcare communication platform that connects every care team member and facilitates effective, patient-focused collaboration. We're securely bridging the communication and collaboration gap between doctors, nurses, patients, and even caregivers.

66. The Defendant's infringing instrumentalities provide user interfaces.





67. The Defendant's infringing instrumentalities provide end users access to variety of Network Resources, listed and/or cataloged for the user (*e.g.*, via a directory).



68. Via the user interface, an end user enters a transaction request – defined or characterized by a number of contextual elements.

69. The Defendant's infringing instrumentalities generate and process transaction requests for access to Network Resources.



70. The Defendant's infringing instrumentalities process the transaction request, select one or more responsive resources, and deliver access to a responsive resource through a user interface.

71. Plaintiff herein restates and incorporates by reference paragraphs 15 – 70, above.

72. All recited elements of – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent are present on or within the Defendant's infringing instrumentalities.

73. The Defendant's infringing instrumentalities infringe – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent.

74. The Defendant's infringing instrumentalities literally and directly infringe – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent.

75. The Defendant's infringing instrumentalities perform or comprise all required elements of – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent.

76. In the alternative, the Defendant's infringing instrumentalities infringe – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent under the doctrine of equivalents. The Defendant's infringing instrumentalities perform substantially the same functions in substantially the same manner with substantially the same structures, obtaining substantially the same results, as the required elements of – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent. Any differences between the Defendant's infringing instrumentalities and the claims of the '730 Patent are insubstantial.

77. The Defendant's infringing instrumentalities require end users to operate those instruments in a manner prescribed and controlled by Defendant. Defendant therefore exercises control and/or direction over the performance of every action performed on or by an infringing instrumentality, including those that are initiated by an end user via the user interface.

78. All recited elements of – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent are present within, or performed by, the Defendant's infringing instrumentalities or, in the alternative, performed by end users of the Defendant's infringing instrumentalities under the direction and control of Defendant – and are therefore attributable to Defendant.

79. In the alternative, the Defendant's infringing instrumentalities infringe – indirectly – claims 1, 15, 17, 37, and 42 of the '730 Patent, by virtue of Defendant's exclusive control and direction of the infringing instrumentalities and/or operations.

80. The Defendant's infringing instrumentalities, when used and/or operated in their intended manner or as designed, infringe – at least – claims 1, 15, 17, 37, and 42 of the '730 Patent, and Defendant is therefore liable for infringement of the '730 Patent.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed the '730 Patent;

   b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith, from infringement of the '730 Patent;

   c. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '730 Patent as provided under 35 U.S.C. §§ 284, 286;

   d. An award to Plaintiff for enhanced damages resulting from the knowing and deliberate nature of Defendant's prohibited conduct with notice being made at least as early as the service date of this complaint, as provided under 35 U.S.C. § 284;

   e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

   f. Any and all other relief to which Plaintiff may show itself to be entitled.

Respectfully Submitted,

By: */s/ K. Patrick Babb*
K. Patrick Babb
State Bar No. 24077060
E-mail: pbabb@foxrothschild.com
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, Texas 75201
(972) 991-0889
(972) 404-0516 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**